ANN JOHNSON et al. *v.* PHILIP TUGGLE et ux.

Where the omission to insert in an affidavit the name of the person who made it, is shown to be a mere clerical error, it is within the powers of the court having jurisdiction of the subject-matter to make the amendment by inserting the name of the affiant.

In an action of unlawful entry where no demand is made for rent under the act of 1846, (Hutch. Co. 821,) it is error to render judgment for the rent of the premises claimed unless a demand for rent is set up in the complaint.

T. and wife sold certain land to J., for which she executed her note payable on the 1st of January, 1852, and T. and wife executed to her a bond for title, binding themselves " to make to the vendee or her assignee a good and sufficient title to the land on the payment of the purchase-money ;" and after the maturity of the note, an agent of T. and wife called on J. demanding payment of the money, who stated that there was an incumbrance on the land which, when discharged, she (J.) said she would pay the purchase-money, as she desired to retain the land. No notice was given that T.

and wife considered the contract at an end:—*Held*, that T. and wife were not entitled to the possession of the land until the contract for the sale of it was put an end to, which they might have done by proper steps.

T. and wife might have held the purchaser to her bargain and sued on the note for the purchase-money; but they could not both sue on the note, and bring an action for the possession of the land; for the one course is wholly inconsistent with the other.

The terms of the bond for title being to convey the title upon the payment of the purchase-money generally, and not by any specified time; it was necessary for the plaintiffs to determine the contract before they can claim the right of possession of the land.

The declaration and pleadings thereupon upon the note given for the purchase-money of the land, was competent testimony, and was improperly ruled out by the circuit court.

In error from the circuit court of Tishomingo county; Hon. Hugh R. Miller, judge.

This was an action of unlawful detainer commenced under the statute by Tuggle and wife against the defendants, in the justices' court, for the possession of the north-east quarter section fourteen, township two, range seven, lying in Tishomingo county. Several bills of exceptions were taken during the trial of the case.

The material facts upon which the decision was made will be found in the opinion of the court, and the points made by counsel.

*George T. Swann* for appellants.

1st. The court erred in refusing the motion to quash, set out in the first bill of exceptions. It appears that the name of the person on whose affidavit the warrant issued was not inserted in the jurat till after motion to quash for want of affidavit. The statute (Code, 814, § 5) requires the oath to be " certified at the foot" of the complaint, and " thereupon " the warrant is to be issued. It was certainly not so certified when the warrant issued, and not until the trial had commenced.

2d. The court erred in ruling out the testimony offered as stated in the second and third bills of exceptions.

The proof showed that the land in controversy had been sold by Tuggle and wife to Ann Johnson, for $1,000, secured by note

of herself and Hawkins, due 1st of January, 1852, and that a title bond, not a deed, had been given conditioned to make title on payment of the note ; that the purchasers had refused to pay the note on account of a defect of title to the land, but had insisted on having the title perfected to them, stating that they were desirous to keep the land, and would pay as soon as title was made according to the covenants in the bond.

The proof offered in both cases conduced to show an incumbrance by an annuity charged on the land, which Tuggle and wife had failed to remove.

Ann Johnson and Hawkins having been put in possession under their purchase, had a right to insist on their contract for title, and could not be considered " trespassers," as erroneously charged by the court in the first instruction given at the instance of Tuggle and wife. They had a right to the possession which had been given them, and a right to retain it, and their money too, until Tuggle and wife complied with their bond for title. They were bound to make a title not good in form only, but in substance, before they could demand the purchase-money. The covenants were dependent, according to the ruling of this court in many cases. *Peques* v. *Mosley,* 7 S. & M. 347; *Liddel* v. *Sims,* 9 Ib. 612; *Wiggins* v. *McGimpsey,* 13 Ib. 538, 539; *Mobley* v. *Keys,* Ib. 678, 681.

It is plain that the annuity charged on the land by the will of Lewis Roffe was an incumbrance on the title, to the removal of which Tuggle and wife were bound, and without which they could not make the title they had agreed to make. The purchaser might elect in such a case to have a rescission of the sale, but Tuggle could not. They had a right to hold him to his bond, and to retain the possession as against vendors, till they had completed the title. It was with the view of showing this defect in the title, and their right to hold possession under their contract till the incumbrance should be removed, that this evidence was offered. - It seems to me clear that it should have been permitted to be given to the jury.

3d. It seems to me the court clearly erred in giving the first instruction asked by the plaintiffs below, taken from the case of *Loring* v. *Willis,* 4 How. 383.

We have shown under the previous head that the purchasers were not "trespassers;" that they entered under a contract of purchase; that they insisted on holding to their contract, and were ready to pay whenever the vendors were ready to make title according to their bond.

In the case of *Loring* v. *Willis*, it is expressly stated by Chief Justice Sharkey, p. 388, "we are not informed whether Loring entered under a contract of purchase, or how, or when, or in what manner he entered," &c. That case, too, was a warrant for " forcible entry," and Loring, for aught that appears, may have been shown by the proof to have entered without any contract, for rent or purchase or otherwise, and as a mere trespasser.

But in the present case we have clearly shown that Johnson, &c., entered under a contract of purchase, which they insisted upon their right to enforce and continue. Tuggle and wife had no right, under the proofs in the cause, to get rid of their contract by electing, after finding they could not make good their covenant, to not only abandon their contract giving possession, but also to enforce payment of the purchase-money, and turn the purchasers out of possession also. This would merit a "patent right" indeed, as urged by the defendant in error in his brief. I humbly submit that this court will not sanction its issuance by maintaining the first charge given the plaintiffs below, upon the facts shown by their witnesses on the trial.

*J. F. Cushman* on the same side.

The affidavit to the complaint filed was not made by any person, as there was no name inserted in the affidavit at the time it was made. If an attorney has authority to make an affidavit in such a case, it is clearly necessary that his name should appear in it when made. The name seems to have been inserted after the affidavit was made and process issued, and we only have an assertion not under oath, that affidavit was made by any one at all. There should, I think, be some authority shown to authorize the attorney to make an affidavit in such a case, even if we admit that there was an affidavit made. Hutch Co. 813–815.

The complainant does not claim damages or rent for the

land, and yet the jury, in awarding the plaintiffs the possession of the land, gave them $47.29 rent. The statute under which this proceeding was sued out does not give rent in such cases. Hutch. Co. 1813. If the proceedings had been sued out under the act of 1846, rent cannot be claimed unless a demand is set up for it in the complaint. Hutch. Co. 821. Rent is no more an incident to an action of this kind than interest is to a claim where there is none contracted for or claimed. It was error, then, to render a judgment for rent when none was claimed or set up.

The statute directs the issue between the parties which the jury is to try in such a case ; yet there must be an issue made up before the jury can try it; and it does not seem as if any issue was ever made up between the parties. An issue is where one party affirms a fact and the other denies it, which has not been done in this case. *Buck* v. *Mallory*, 24 Miss. 170.

The declaration and proceedings upon the note given for the purchase-money of the land for which this action of unlawful detainer was brought, were illegally ruled out when offered as evidence by the defendants, to show what was the previous action of the plaintiffs in regard to the consideration given for the land. This was clearly competent evidence to go to the jury, and no reason or authority can be shown why it should not have been admitted as testimony.

The court is referred to the instructions given for the plaintiff below, where errors will also be found.

*Reynolds* and *Kinyon* for appellees.

The verification shows that an oath was made, and that, too, by one of the attorneys for the parties plaintiff. This must be sufficient. All the ends of the statute were complied with according to the showing of the verification, without the individual name of the attorney being shown in it. Seé, as bearing upon this point, *Redus* v. *Wofford*, 4 S. & M. 579.

There it was held that a complaint under oath to obtain an attachment, need not be signed by the party making it. The reasoning of the court in that case, we think, is applicable in this. The court say, "the statute requires that the creditor shall

make complaint on oath or affirmation of the facts necessary to authorize the issuance of the writ. The evidence of this having been done, is the certificate of the justice of the peace or other officer named in the statute; and the signature of the creditor attached to the affidavit would afford no proof of that fact," &c.

So in this case, the certificate of the justice of the peace proves that the proper oath was made by one of the attorneys of the parties, and, by parity of reasoning, the insertion of the individual name of the attorney in the certificate affords no proof that the requisite oath was made. The proof of the certificate is full, as it was without the insertion of the name.

The magistrate had the right, we think, to insert the name of the attorney in the manner and at the time it was done in his certificate.

It is quite a common occurrence for sheriffs to amend their returns upon process, and there is no good reason against the justice of the peace amending his certificate of the oath according to the facts that does not equally apply against sheriffs being allowed to amend their returns.

In *Izod* v. *Addison*, 5 How., it is held that " the return of the execution into the office of the clerk is a matter *in pais*, to be shown by parol."

In the following cases the doctrine of amending sheriffs' returns is more or less considered, namely, *Williams* v. *Oppelit*, 1 S. & M. 559; *Planters Bank* v. *Walker*, 3 Ib. 409.

In this last case, it will be seen that the doctrine is liberally to be applied.

Again, the evidence of the justice as set out in the bill of exceptions introduced by the plaintiffs in error to sustain their motion to quash, does not contradict the certificate, but proves what the certificate itself proves, namely, that oath was made, and in addition, the name of the attorney making it.

We copy the following from Livingston's Monthly Law Magazine for November, 1853, p. 736, namely: *Jordan* v. *Corey*, 2 Carter (Ind.), R. 385. This case drew in question the validity of a deed, in the execution of which three married women had joined with their husbands in conveying lands in which

the wives had an interest by descent. The objection taken to the deed was this; that the certificate of acknowledgment did not state, as it was contended was required by the statute, that the wives were examined by the officer, " without the hearing of their husbands," and the court sustained the objection. The defendant then requested that the officers who made the certicates should now be allowed to amend them by inserting in them, at the trial, the fact that the acknowledgments were made by the wives without the hearing of their husbands. The plaintiff objected, and the court refused to allow the amendment, and the propriety of this ruling was one of the questions upon the appeal.

Blackford, J. " We think that officers had the right, and indeed that it was their duty, to correct at any time any mistake in their certificate. Such a certificate is an act *in pais*, which may be altered at any time by the officer who made it. (*Elliot* v. *Peersoll*, 1 Pet. 328.) The certificate does not depend for its validity upon its being a matter of record. A deed without such certificate as the statute requires, cannot be recorded. If the acknowledgments were really made by the married women without the hearing of their husbands, that fact might have been inserted in the certificates at the trial, *nunc pro tunc*, by the officers who made them; and the certificates would then have had the same effect as if they had at first been properly made."

We think, on looking to the peculiar phraseology and structure of the statute requiring the complaint to be verified, and prescribing the substance of the certificate of the verification, that two independent things are to be done.

1. The plaintiff, agent, or attorney shall make oath that he believes the allegations of the complaint to be true.

2. The justice of the peace shall certify the fact at the foot of the complaint. The plaintiff, his agent, or attorney, having made the requisite oath, his right to the action is complete, and the fact that he has done all that is requisite to be entitled to the action, is to be proved by the certificate of the justice.

The certificate is no part of what the plaintiff must do to entitle himself to the remedy, but is the proof the justice is to

furnish, and which the law says shall be sufficient, that all has been done necessary to have the remedy. And if the certificate is not in accordance with the facts, those facts may be established, and the justice be required to amend accordingly. Courts certainly will not allow officers, by neglect, mistake, or otherwise, in certifying facts officially, to prevent parties (they having done all things necessary) from having their proper remedies.

The certificate under consideration is like the one in *Jordan* v. *Corey*, cited, "an act *in pais*," and may be altered to conform to the facts.

We therefore conceive that the motion to quash was properly overruled.

The proof on the part of the plaintiffs, we think, is ample to warrant the verdict of the jury. It consists of the note executed by the defendants below for the purchase-money of the land in controversy for $1,000, dated 8th of November, 1850, and payable the 1st of January, 1852, and the bond executed by the plaintiffs below to make title on payment, acknowledgment of the purchase, demand and non-payment, and of occupancy.

The proof brings the case under the rule of law laid down in *Loring* v. *Willis*, 4 How. 383, and *Holloway* v. *Moore*, 4 S. & M. 594, and fully within the meaning of the rule in *Newman* v. *Makin*, 13 Ib. 383.

The excuses given for the non-payment of the purchase-money, and the testimony excluded and set out in the second bill of exceptions, all go to the investigation and impeachment of the title of the vendors.

That the testimony offered and excluded was properly excluded, is fully sustained by the cases cited, and more than confirmed by the case of *Cummings* v. *Kilpatrick*, 23 Miss. R. 102, we think a simple inspection of the cases will show.

The doctrine seems to be well settled, that the action is merely possessory, and the right to possession is the only matter that can be settled by it. The excuse offered for not paying the purchase-money, we think, is well met by the remarks of the court in *Newman* v. *Makin*, 13 S. & M. 383, as follows,

Johnson et al. *v.* Tuggle et ux.

namely : " Having admitted the right by accepting the lease, she was estopped from denying it, at least until she had surrendered the possession, and placed the plaintiff in the same situation which he occupied before the lease." *Williamson* v. *Watkins*, 3 Peters, 50.

Here, the defendants below, having admitted the validity of the plaintiffs' title by accepting the terms of purchase and possession, were equally estopped from denying it until they surrendered the possession to them.

2 Greenl. Ev. § 305, reads: " Even an agreement to purchase the lands, if made deliberately, estops the purchaser from denying the title of the vendor " (cites several authorities). We believe the rule laid down by Greenleaf is the one acted upon by this court, and that the vendee is only allowed to defend, upon the ground of defect of title, under pleas of fraud, failure of consideration, and mistake. The excuse rendered falls under neither of these heads, and therefore would have been unavailing, even in a suit upon the note itself.

The matters set out in the third bill of exceptions were properly excluded by the court, because they only went to show what defence was set up in the suit upon the note, and the judgment on the demurrer to the answer only determined that the answer, being admitted as true by the demurrer, was a good defence ; but leave was given to reply, under which the truth of the answer would have to be proved. With all deference, we think the judgment of the court upon the demurrer was erroneous.

But suppose we admit that after the purchase, and before suit brought, the consideration for the note had wholly failed, by the land becoming chargeable with more than it was worth, will that avail as a defence against obtaining the possession? We think, upon the plainest principles of common sense and the most obvious rules of justice, as well as by abundant authority, the excuse and defence is utterly worthless. The authorities already cited are sufficient.

Mr. Justice HANDY delivered the opinion of the court.

This was a proceeding of unlawful detainer before justices of

the peace in Tishomingo county, and taken by appeal to the circuit court of that county, where a verdict and judgment were rendered for the defendants, from which the case is brought here.

The first objection taken to the proceedings below is, that the justices, on the trial before them, overruled the motion made by the defendants to quash the proceedings, on the ground that the affidavit attached to the complaint did not show the name of any person taking the oath.   When this motion was made, the justices allowed an amendment supplying the name of the plaintiffs' attorney who really made the affidavit, but whose name was omitted through mistake.   The denial of the motion to quash and the allowance of the amendment are alleged to be erroneous, but we do not consider the objection well founded. The omission of the affiant's name was shown to be a mere clerical error, which it was entirely competent to correct, and which was fully within the powers of the court in relation to amendments.

The next error assigned is, that the verdict and judgment were not only for the possession of the land, but for rent.

The complaint was instituted under the act of 1822, § 4, Hutch. Dig. 813, and claims the possession only of the land. No demand is made for rent under the provisions of the act of 1846, Hutch. Dig. 821, and we are of opinion that it was error to render a judgment for rent of the premises, unless a claim for rent were set up in the complaint.   The act of 1846 merely gives the right to recover the rent in a proper case.   It does not dispense with the necessity of demanding it in the complaint. Upon general principle, the defendants were entitled to notice of the entire claim of the plaintiffs, in order that they might come prepared to meet it; and of course the plaintiffs' recovery could extend no further than their demand.

But there is an error of a more serious character in the proceedings.

It appears that the plaintiffs had contracted to sell the land to the defendant Johnson for the sum of $1,000, for which she had executed her note payable 1st of January, 1852, and the plaintiffs had executed a bond for title, binding themselves "to

71 *

make to the vendee or her assignee a good and sufficient title to the land on the payment of the purchase-money." After the maturity of the note, an agent of the plaintiffs called on the defendants, demanding payment, and stating that he had a deed for the land to be delivered upon payment of the money; in answer to which it was stated that the land was subject to an incumbrance which was specified, upon the discharge of which the purchase-money would be paid; that the defendants wished to retain the land, and wanted a good title according to the title bond. No notice appears to have been given that the plaintiffs considered the contract at an end. But on the contrary, the defendants offered in evidence a declaration and pleadings thereupon upon the note given for the purchase-money, instituted to the March term, 1852, which were objected to by the plaintiffs, and the objection sustained. The present proceeding was instituted in January, 1853.

Now it is clear, that the plaintiffs were not entitled to the possession of the land, unless the contract for the sale of it was put an end to. They might have put an end to the contract by proper steps, and then proceeded for possession of the land; or they might have held the purchaser to the bargain and sued on the note for the purchase-money. But it is plain that they could not do both, and that the one course is wholly inconsistent with the other. No evidence is adduced on the part of the plaintiff to show that the former course was pursued, and it is proved by them that the defendants did not desire to put an end to the contract. The completion of the purchase was not limited to any particular time, the terms of the title bond being to convey the title upon the payment of the purchase-money generally, and not by any specified time. Hence it was necessary that the plaintiffs should determine the contract in order to have the right of possession of the land. Of this there is no evidence; but on the contrary, the evidence of the suit on the note offered by the defendants tended directly to show, that the plaintiffs considered the contract of purchase as still in force, for otherwise the note upon which their suit was brought was without consideration.

It is therefore manifest, that this evidence was material and

proper upon the trial of the issue of the plaintiffs' right of possession, which depended mainly upon the question whether they had put an end to the contract, and that it was improperly rejected.

For these errors the judgment is reversed, and a *venire de novo* awarded.