## W. H. MOAK VS. NORRIS BRYANT.

1. VENDOR AND VENDEE: *Possession under an executory contract of purchase.*
   The general rule is that possession, acquired under an executory contract of purchase, being rightful in its inception, something, *ex post facto*, must be done to make it tortious. The vendee must repudiate the contract under which he entered, or fail to comply with its terms in order that the vendor may treat the contract as at an end. Demand of possession or notice to quit are not necessary.

2. SAME: SAME.
   The covenants of such a vendor and vendee are mutual and dependent and contemplate contemporaneous performance. If the vendor desires to put the vendee in default he must perform his covenants and deliver or tender a deed when payment is demanded. If the vendee is put in default the vendor may either recover possession of the land or enforce his lien for the purchase money.

3. SAME: *Tender of deed; effect thereof.*
   Where the vendor tenders a deed to the vendee, although it may not conform to the terms of the contract, and the vendee makes no objection to the deed either for form or substance, but merely declares his inability to pay for the land, he waives all objections to the deed, and it is too late to raise the objection when sued for the possession of the land.

4. SAME: *Suit for possession; effect thereof.*
   When the vendee is put in default and the vendor elects to abandon the contract and sue for the possession of the land by unlawful detainer, such possessory action does not affect any equities that might exist between the parties.

ERROR to the Circuit Court of *Lincoln* County.

Hon. JAMES M. SMILEY, Judge.

Plaintiff in error instituted his action of unlawful detainer against the defendant in error before a justice of the peace, where a judgment was rendered for defendant in error. Plaintiff took an appeal to the circuit court, where the case was again tried, with a like result.

On the trial of the cause, the circuit judge, at the request of the defendant, gave the following instructions :

1. That, unless they believe, from the evidence, that the plaintiff notified the defendant of his intention to (put) an end to the contract, and did such acts as to have that effect, then he cannot recover in this action.

2. That if the jury believe, from the evidence, that a part of the purchase money of the land was paid by the defendant to the plaintiff, then, before the contract can be terminated, the plaintiff should have refunded or tendered to refund, so much of the purchase money as would have placed the defendant in the position he was in before the purchase.

3. That in order to constitute a tender of a deed in compliance with the contract in the bond, it must have been such a deed as the bond required, a title to the land in question in fee simple, and, unless it is in proof that such a tender was made by the plaintiff, then the defendant was not in default, and they can find for the defendant.

4. The court further instructs the jury, that unless they believe from the evidence that the defendant contracted with plaintiff to deliver possession of the premises or failed to pay the purchase money, the plaintiff cannot recover from the defendant in this form of action. And if the jury believe from the evidence that there was no agreement to deliver possession of the land in controversy, on failure to (make) payment of the purchase money, then they can find for the defendant.

A verdict and judgment was rendered for the defendant, and the case comes to this court on a writ of error.

The following errors are assigned :

1. The court erred in giving the first instruction asked by defendant.

2. The court erred in giving the second instruction asked by defendant.

3. The court erred in giving the third instruction asked by defendant.

4. The court erred in giving the fourth instruction asked by defendant.

5. The court erred in refusing to grant a new trial.

*Chrisman & Thompson*, for plaintiff in error:

This case, and every question involved in [it, is decided in Gregg *v.* Von Phul, 1 Wall., 274. Does the action of unlawful detainer lie in a case like the one at bar? See Prentice *v.* Wilson, 14 Ill., 92; 16 Ohio, 489. The principles for which we contend, and those we think should control, are distinctly and definitely recognized in Johnson *v.* Tuggle, 27 Miss., 836, and in Bellamy *v.* Shelton, 26 Miss., 250.

*H. Cassedy Jr.*, for defendant in error:

The bond for title bound Moak to tender Bryant a " title in fee simple " to the land before he could put an end to the contract. The covenants were mutual and dependent. Arthur *v.* Pearson, 32 Miss., 131; Walton *v.* Wilson, 30 Miss., 576. The fourth instruction announces a correct proposition. See Code of 1871, § 1582. The vendor may maintain this form of action, after the expiration of the right of the vendee by contract to hold possession. There must be a contract in reference to the possession.

Simrall, J., delivered the opinion of the court.

The plaintiff in error, Moak, brought the special action of unlawful detainer against Bryant, and developed on the trial these facts: Moak sold and agreed to convey to Bryant the land in controversy by " a good and sufficient title in fee simple," provided, "Bryant shall, on or before the first of January, 1871, pay Moak 3,400 pounds of lint cotton." The terms of the contract are embodied in a bond for title, executed by Moak the 4th of January, 1870. On the 1st of December, 1871, Bryant paid 2,055 pounds of cotton, and on the 20th of the same month 392 pounds. Bryant went into possession immediately after his purchase. On the last day of December, 1872, Moak applied to Bryant to pay the balance, and at the same time—in his own language—"took

a deed to the land out of his pocket, and exhibited it in his hand to the defendant, and told defendant it was intended to be a guarantee title,'and if it was not such, he was ready to deliver another, and such one, if he objected to this, on payment of the balance due." The defendant made no objection to the deed, but said he had no money and was not able to pay, but would if he he ever got able. Plaintiff then demanded possession of the land, and notified defendant he would put him off in ten days, if he could.

The original suit was brought the 1st of January, 1873. A bill of exceptions was taken to the judgment of the circuit court, overruling the motion for a new trial.

The questions raised in this court are, that the second and third instructions for defendant are erroneous. The second instruction affirms that the contract would not be terminated unless upon the condition that the plaintiff refunded, or tendered back so much of the purchase price as he had received. The third instruction informs the jury "that unless it was in proof that a deed in conformity with the requirements of the bond was tendered, then the defendant is not in default, and the jury can find for the defendant.

Can the vendor recover possession in this mode of suit against his vendee, in any circumstances? And secondly, if so, ought a recovery to be had in the special circumstances of this case?

The general principle seems to be, that possession acquired under an executory contract of purchase, being of right in its inception, something (*ex post facto*) must transpire to make it tortious. The vendee must repudiate the contract under which he entered, or fail to comply with its terms. In the latter case (failure to comply), according to the English cases (13 East, 210; 1 Barn. & Cress., 448; 1 Sug. on Vendors, 249) puts the vendee at liberty to treat the contract as at an end. Demand of possession, or notice to quit, are not necessary. The cases in New York and Ohio assert the same doctrine. 7 Cow., 747; 1 Wend., 418; 16 Ohio, 485.

The covenants of these parties are mutual and dependent, and contemplate contemporaneous performance. The deed shall be

made on reception of the consideration price ; the cotton to be delivered when the deed is executed. A day is appointed (the 1st January, 1871) when these respective acts are to be performed.

If the vendor desires to hold the vendee to performance, or to put him in default, he must keep his part of the covenant by a delivery or tender of the deed. If the day named in the covenant for performance has passed (when time is not of the essence of the contract), it may fairly be presumed that the vendor acquiesces, and it should therefore be required of him that he should notify the purchaser that further indulgence will not be given, and that the contract must be complied with or the possession restored.

Two courses seem open to the vendor, either to adhere to the contract and to insist upon payment of the money, or to put the purchaser in default, and notify him that the executory contract is at an end. Johnson v. Tuggle et ux. 27 Miss., 845–6.

In Loring v. Willis et al., 4 How., 388, there is a distinct intimation by the chief justice, that if the purchaser refuses to pay, the vendor might regain possession of the land. After a failure or refusal to comply, the possession of the purchaser becomes wrongful (Prentice v. Wilson et al., 14 Ill., 92), and notice to quit is not necessary. Baker v. Lessee of Gittings et al., 16 Ohio, 488–9; Gregg v. Von Phul, 1 Wall., 280–1–2.

If the vendor has acquiesced in the failure of the vendee to fulfill his covenants, it is but equitable and just (so that the purchaser may not be taken by surprise), that the vendor should apply for payment, and at the same time offer to perform his covenants. That view seems to be supported by the authorities in our books. Arthur v. Pearson, 32 Miss., 131 ; Walton v. Wilson, 30 id., 576 ; Johnson v. Jackson, 27 id., 498 ; Bellamy v. Shelton, 26 id., 250.

Within the rule deducible from these cases, Moak did all that was required of him. He prepared, sealed and acknowledged a deed, which he supposed conformed to his covenant. He had the deed ready to be delivered to Bryant on payment of the cotton, money or property, either of which he expressed himself willing

to accept. The instrument was not delivered because Bryant "*in limine*" declared his inability to comply. Thereupon Moak demanded a restoration of the possession of the land, and, on refusal, stated that he would proceed to recover it.

The third instruction, considered in reference to the testimony, was well calculated to mislead the jury. It is true that Moak ought to have offered such a deed as he had contracted to make. It was not shown that the one which he sealed conformed to his covenant. Nevertheless, the defendant did not examine, or cause it to be examined; did not express a willingness to accept a proper deed; he made no point or stand on that subject, but raised it by an outright statement of inability, on his part, to pay.

If he had objected to the deed for incompleteness in any particular, Moak stood pledged by his statement to make needful corrections.

Moak was ready with such a deed as he thought to be good. Bryant did not call it in question, or so much as crave that it might be examined by a competent person. From all that appears, Moak acted in good faith. The only reason assigned by the defendant for failing to comply was inability to pay. It is too late now, and would be inequitable for Bryant to interpose objections and excuses, which he failed to make at the time. Gregg *v.* Von Phul, 1 Wall., *supra.*

The instruction, whilst sound as a general rule, had the effect of obscuring, if not altogether withholding from the jury the consideration of the waiver by Bryant of objections to the deed.

It is proper to observe that nothing more is involved in this suit than the right of possession. The equities of the respective parties will not be affected.

There is error. Judgment reversed and cause remanded for a new trial.