VANLANDINGHAM et al. *v.* JENKINS

In Banc. Dec. 31, 1949

No. 37324 (43 So. (2d) 578)

W. O. Luckett, Roberson, Luckett & Roberson, for appellants.

Maynard, Fitzgerald & Maynard, for appellee.

**Montgomery, J.**

The appellee, W. A. Jenkins, was the owner of a house and lot in the City of Clarksdale, which he turned over to Holcomb and Longino, Inc., Real Estate Agents, for sale. He did so under what is known as an agency contract, a part of which was as follows: ''The title is good and abstract of title and taxes will be furnished at my expense.'' Thereafter Charles Longino, Jr., of the real estate firm, contacted H. C. Vanlandingham and Ernest Vanlandingham, who are brothers, and as a result thereof an agreement was reached between them. Under it, the Vanlandinghams were to buy Jenkins' property for $4,000, $1200 of which was to be paid in cash and the remainder was to be paid at a rate not to exceed $50 per month.

At the time this agreement, which was oral, was reached, the Vanlandinghams put up $400 as earnest money with the real estate firm. On being notified of the sale Jenkins requested Honorable E. M. Yerger, an at-

torney of Clarksdale, to prepare the necessary papers for closing the deal. Mr. Yerger asked Jenkins if an abstract of title had been promised, and Jenkins said that he did not know of any promise of an abstract of title, and he requested the attorney to inquire of Holcomb and Longino, which he did. Holcomb and Longino informed him that their contract with Jenkins called for an abstract of title, but that very probably Mr. Yerger's opinion on the title would be satisfactory to the Vanlandinghams, and that an abstract would not be necessary. Mr. Yerger informed the real estate firm that he would not have time to get up a complete abstract of title, but that he would make a thorough examination of the record and that very probably the Vanlandinghams would accept his opinion on the title, and, if not, then they would have a few days additional time to furnish an abstract. With this understanding, Mr. Yerger prepared the paper and notified Holcomb and Longino that they were ready for execution.

There was outstanding on the property a first mortgage to the Home Owners' Loan Corporation, in the amount of $1340, with a monthly payment of $18.73, and a second mortgage to Mrs. Fontaine, from whom Jenkins had purchased the property, in the amount of $660, with a monthly payment of $11.01, these two loans aggregating the principal sum of $2,000, and the monthly payments aggregating $29.74. Mr. Jenkins told Mr. Yerger that he would like for his notes to be in the round sum of $21 per month, and so in preparing the papers Mr. Yerger had fixed the monthly payment at $50.74, which included the $18.73 and the $11.01 monthly payments on outstanding loans, which were not being assumed by the purchaser, and also including the $21 monthly payment to Jenkins.

Mr. Yerger notified Holcomb and Longino that the papers were ready, and they in turn notified the Vanlandinghams who came to Clarksdale and a meeting was held

in the office of Mr. Yerger. At this meeting, the Vanlandinghams objected to the notes being in the sum of $50.74, instead of $50, and Jenkins agreed to reduce the notes to $50 per month. Then, the Vanlandinghams demanded an abstract of title. Mr. Yerger explained that he had examined the records and was prepared to give them his opinion of title, and would furnish his abstract within a few days, as soon as it could be gotten up from the records. The Vanlandinghams refused to close the trade without the abstract of title, and Mr. Yerger told them he would have to set another day for the closing of the transaction, after the abstract had been prepared. This conference was in the late afternoon, and after adjournment the Vanlandinghams notified Mr. Yerger that the trade was off, and they would not go through with their contract. The Vanlandinghams then demanded the return of the $400 paid to Holcomb and Longino as earnest money. Holcomb and Longino filed a bill of interpleader in the Chancery Court of Coahoma County, paying into Court this $400 and interpleading Jenkins and the Vanlandinghams to assert their interest in the fund. The Chancery Court, on this interpleader, awarded the $400 to the appellee Jenkins, and from this decree the Vanlandinghams appeal.

The appellants assign as error the rendering of the decree in favor of appellee, and in not rendering it in favor of appellants, in not finding that appellee had not complied with the sales contract, and in awarding the earnest money of $400 to appellee. In their brief they argue that appellee's failure to furnish an abstract of title at or before the closing date entitled appellants to rescind the contract and recover their earnest money.

Charles Longino of the firm testified that in the oral contract of sale that the Vanlandinghams made no request for an abstract of title, and that he did not know whether the Vanlandinghams read the contract between Jenkins and the real estate firm or not. Ernest Vanland-

ingham testified that he never read the contract between Jenkins and the real estate firm, but that he advised the real estate firm that he wanted a good deed which would entitle him to get the place when he paid for it "and he would refer him to the abstract" H. C. Vanlandingham testified that he told Mr. Longino that he wanted an abstract, and Mr. Longino promised him that he would get it. On this conflict of evidence, the chancellor may have held that the parties did not contemplate the furnishing of an abstract of title, and hence the appellee Jenkins was under no obligation to deliver it. But it is equally true that the chancellor may have based his decision upon the ground that even though an abstract of title was contemplated between parties, yet Jenkins would have a reasonable time within which to furnish said abstract of title. The contract between Jenkins and the real estate firm provided that possession was to be given of the property within thirty days after the sale.

The day after the agency contract was obtained, Mr. Longino interviewed the Vanlandinghams and the oral agreement was concluded some four or five days after the execution of the agency contract. Mr. Jenkins promptly instructed Mr. Yerger to prepare the papers, and the conference that was held in Mr. Yerger's office, which led to a repudiation of the contract by the Vanlandinghams, was all within a period of a few days after the closing of the oral agreement.

Without passing upon the question of whether or not an abstract of title was contemplated by the parties, we do not feel that the Vanlandinghams were entitled to rescind the oral contract because of the failure to immediately furnish an abstract of title. The true rule is stated in 52 A. L. R. at page 1481, as follows: ██ "Where the contract contains a stipulation obligating the vendor to furnish an abstract of his title to the vendee, but no particular time is fixed in which it is to be furnished, an implication arises that the abstract is to be furnished within

a reasonable time in view of all the circumstances, and compliance by the vendor with this implication is obligatory.''

The proof here does not show that any particular time was fixed in which the abstract of title was to be furnished, and the implication arises that it was to be furnished within a reasonable time in view of all of the circumstances and ▉ where, as here, the vendor had reason to believe that it would not be required at all, he would be entitled to a reasonable time for furnishing it when thereafter demanded, and the vendee has no right to rescind the contract without giving a reasonable time for the furnishing of the abstract.

The appellants also argue that the deed which was tendered to the grantees contained a provision requiring the grantees to pay the taxes for the current year, in contradiction of the agency contract which provided that the grantor was to pay the taxes.

▉ It is clear from the evidence in this record that at the meeting in Mr. Yerger's office the Vanlandinghams urged only two objections—one was that the monthly notes were in the amount of $50.74, and the other was that no abstract of title had been furnished. No objection was raised to the form of the deed requiring the Vanlandinghams to pay the taxes. The record shows that Jenkins agreed to reduce the notes from $50.74 to $50 and agreed to furnish the abstract of title. It is reasonable to assume that he would also have agreed to strike from the deed the provision in regard to the taxes had any request been made of him that he so do. Anyhow, it is too late for him to now complain of any objection that he did not at that time make, and that the grantor did not have an opportunity to meet. This has been the law of this State since 1875, when Moak v. Bryant, 51 Miss. 560, was decided. In that case, the Court said:

"It is true that Moak ought to have offered such a deed as he had contracted to make. It was not shown that the one which he sealed conformed to his covenant. Nevertheless, the defendant did not examine, or cause it to be examined; did not express a willingness to accept a proper deed; he made no point or stand on that subject, but raised it by an outright statement of inability, on his part, to pay.

"If he had objected to the deed for incompleteness in any particular, Moak stood pledged by his statement to make needful corrections.

"Moak was ready with such a deed as he thought to be good. Bryant did not call it in question, or so much as crave that it might be examined by a competent person. From all that appears, Moak acted in good faith. The only reason assigned by the defendant for failing to comply was inability to pay. It is too late now, and would be inequitable for Bryant to interpose objections and excuses, which he failed to make at the time. Gregg v. Von Phul, 1 Wall. 274, [U. S.], 280-281-282, 17 L. Ed. 536, supra."

The lower court was correct in holding that the Vanlandinghams were not entitled to repudiate the transaction.

This brings us to a consideration of whether earnest money is a penalty or liquidated damages. As early as 1847, which is now more than 100 years ago, this Court set this question at rest, ██ holding earnest money to be liquidated damages, and in its opinion the Court there said, in Sims V. Hutchins, 8 Smedes & M. 328, 47 Am. Dec. 90: "The only grounds for such a recovery are the unwillingness or inability of the vendor to convey according to contract, or a mutual abandonment of the contract. That the contract was not in writing may be good ground for defence, when specific performance of the contract is sought against the vendor, for whose benefit the statute was passed; but if the vendor is will-

ing to perform, the price paid cannot be recovered back. ▮ Contracts by parol for land generally regarded as voidable merely. Philbrook v. Belknap, 6 Vt. 383. On this principle it is clear, that if the vendor does nothing to avoid the contract, but on the contrary is both able and willing to perform, the vendee cannot recover what he has paid. The precise point now before us was raised in the case of Dowdle v. Camp, 12 Johns, N. Y., 451, and it was holden that the vendee could not recover back his money without some default of the vendor. The same point was also very fully considered in Shaw v. Shaw, 6 Vt. 69, and decided in the same way. The verdict was therefore manifestly against the law and the evidence, and the motion for a new trial ought to have been sustained.''

It therefore follows from what we have said that the lower court was correct in awarding the earnest money to the appellee. We find no error in the record, and the decree of the lower court is affirmed.

Affirmed.